LOUISE E. WOODS *et al. v.* ROBERT B. MCCLAIN

(No. 7251)

Submitted September 11, 1932. Decided October 18, 1932.

*John B. Wilson,* for appellant.
*Edmund Lee Jones,* for appellee Louise E. Woods.
*A. E. Bryant,* for John P. Arbenz.

HATCHER, PRESIDENT:

This appeal seeks three corrections in the disbursement of funds derived from the sale of real estate in a partition suit.

The suit was brought in 1929 by Louise E. Woods against Robert B. McClain to partition some real property which they owned jointly. Mrs. Woods was represented by John P. Arbenz, Esquire, who prepared the papers and conducted the suit. Mr. McClain did not file an answer, or offer any opposition to the suit but was represented by J. Bernard Handlan, Esquire, who examined all the papers and otherwise acted for his client at every step leading to the sale of the property. Mr. Handlan was not formally noted as an attorney of record; but his representation of Mr. McClain was recognized by both the court and Mr. Arbenz. The suit ran the usual course of such proceedings, and the property—incapable of partition—was sold on June 21, 1930, at public auction by Messrs. Arbenz and Handlan, as joint special commissioners, to Mrs. Woods at the price of $326.000.00, one-third of which was paid cash. The decree confirming the sale was not entered until July 23, 1931. That decree allowed the two commissioners the joint sum of $16,300.00 as commissions on the sale, and also conferred on Mr. Arbenz out of the fund ''a fee of $5,000.00 for his services in preparing, conducting and prosecuting this suit.'' The balance of the purchase price was adjusted July 24, 1931, Mrs. Woods being credited with her equity of one-half.

The first correction sought is the disallowance of the $5,000.00 fee of Mr. Arbenz. His counsel furnishes the following description of this suit: ''This is not a case where lengthy, expensive and hotly contested litigation is involved * * *. Here we have no contest, in any legitimate, honest and proper consideration or construction of that term; no adversary or hostile proceedings, no appearances of counsel, no answer filed, no disputed questions involved, no question

of title raised, nothing whatever but a mere friendly and amicable proceeding to cause the property to be disposed of under orders of court and a proper division of the proceeds made among the two parties who admittedly were equally entitled thereto.'' Counsel would justify the fee on the following theory: (1) Costs in a friendly partition suit are apportioned, ordinarily, among the owners on the basis of interest, *Vandall* v. *Casto*, 81 W. Va. 76, 85-6, 93 S. E. 1044 and *Cresap* v. *Brown*, 82 W. Va. 467, 96 S. E. 66; (2) costs have been defined as including attorney's fees, *Chambers* v. *Cline*, 60 W. Va. 588, 596, 55 S. E. 999; and (3) the instant suit was primarily friendly.

An attorney's fee of fifteen to twenty dollars was taxable under Code 1923, ch. 138, sec. 13, as a part of the costs in a chancery suit. But the statutory fee was the only one so taxable as a matter of course, even in a friendly partition suit. A court is not justified, ordinarily, in paying plaintiff's attorney from funds under its control, except when the other parties have ''stood by without counsel'' and would reap the benefit of the servies rendered by the attorney conducting the proceeding. *Roach* v. *Collieries Co.*, 111 W. Va. 1, 160 S. E. 860; *Stoneburner* v. *Motley*, 95 Va. 784, 30 S. E. 364; *Dillard* v. *Serpell*, 138 Va. 694; 47 C. J., subject Partition, sec. 920. The retention of counsel by Mr. McClain prevents Mr. Arbenz from profiting under the above rule. ''One jointly interested cannot be compelled to pay for counsel employed by others when he himself has employed counsel to represent his interest.'' *Bailey* v. *Barclay*, 109 Ky. 636, 640. Counsel's description of the suit shows that Mr. Arbenz performed no extraordinary service which might except it from the rule. The record does not disclose the contract of employment between him and Mrs. Woods. However, his appointment as commissioner was due to his representing her, and his commission of $8,150 cannot be overlooked in considering the question of further professional compensation. That perquisite, alone, is so munificent as to exclude his position from the *"rare instances"* mentioned in *Roach* v. *Collieries Co., supra,* which might warrant additional payment

from the fund. Years ago this court called the payment of large counsel fees from such a fund "an abuse". *Fowler* v. *Lewis*, 36 W. Va. 112, 154, 14 S. E. 447. The practice was expressly disapproved in *Crumlish* v. *Railroad Co.*, 40 W. Va. 627, 22 S. E. 90. It was further condemned as "a growing evil", and all courts of equity were cautioned to avoid it in *Weigand* v. *Supply Co.*, 44 W. Va. 133, 161, 28 S. E. 803. That admonition must not grow cold. The fee is disallowed and its repayment with interest is directed.

The second correction sought relates to the allowance made the commissioners for taxes. The taxes on the property for the year 1930, less discount for prompt payment, were $4,347.64. The commissioners had $108,666.67 (received June 21, 1930), in their hands during the fall of 1930 out of which they could have paid the taxes and secured the discount. Instead of doing so, they waited until May 8, 1931, when the taxes with interest amounted to $4,489.67. Their excuse for the delay is that they had no order of the court confirming the sale. They do not claim that they had made timely request of the court to confirm the sale or to permit payment of the taxes and had been denied. They do say an order was prepared by Mr. Arbenz on June 26, 1930, providing for the retention of $6,000.00 for payment of taxes; that the order also included the allowance of the $5,000.00 to Mr. Arbenz and was held up for over a year because Mr. Handlan protested that allowance. As the confirmation of the sale depended in no manner upon the determination of the allowance, their excuse is not substantial; and they will pay to Mrs. Woods and Mr. McClain $142.03, the amount lost on the taxes by their delay, with interest.

On June 22, 1931, $230,373.34 was the balance owing on the property. Mrs. Woods tendered to the commissioners on that day half of this amount in money, to-wit, $115,186.67, and asked that she be credited with a like sum. She was entitled to the other moiety as distributee, so her request was proper and should have been granted. Mr. Handlan agreed to her proposition, but Mr. Arbenz refused it, demanding that she pay to the commissioners the full amount due. Later, on

July 24, 1931, the commissioners did accept her proposition as of June 22, 1931. The interest on $115,186.67 (the part going to Mr. McClain) between those dates would have been $553.66. The third correction requested is the charge of this item to Mr. Arbenz. He contends that had he accepted the payment on June 22nd, he could not have turned it over to Mr. McClain until the sale was confirmed on July 23rd, that he would not have been required to pay interest in the interim, and therefore his action caused no loss to Mr. McClain. This contention overlooks two vital matters. (1) It was the duty of the commissioners to have had the sale passed on by the court with reasonable promptness. Their neglect to do so is a poor defense now. (2) The commissioners in order to secure the reduction of their bond from three hundred to two hundred thousand dollars, had the court enter an order on May 16, 1931 (two months before the sale was actually confirmed, mind you), which, after referring to the sale, recited as follows: ''$108,666.67 was received by the special commissioners, and substantially all of that amount was disbursed by them in payment of costs, expenses and to the proper parties in interest as heretofore ordered and directed by the court.'' The record contains no such prior order, but we will not hear Mr. Arbenz now deny that the commissioners had authority prior to June 21, 1930, to disburse the fund ''to the proper parties in interest''. His refusal to accept the sum tendered by Mrs. Woods on June 21, 1931, was arbitrary and he is required to pay to Mr. McClain his loss suffered by that refusal, to-wit, $553.66, with interest.

The orders of the lower court are reversed in the three particulars herein stated and the cause remanded.

*Reversed in part; remanded.*